IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

LISA D. MCINERNEY,           )
                             )
        Plaintiff,           )
                             )
v.                           )    Case No. CIV-17-248-KEW
                             )
COMMISSIONER OF THE SOCIAL   )
SECURITY ADMINISTRATION,     )
                             )
        Defendant.           )

**OPINION AND ORDER**

Plaintiff Lisa D. McInerney (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case REMANDED to Defendant for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 50 years old at the time of the ALJ's latest decision. Claimant completed her high school education. Claimant has worked in the past as a casino dealer, kitchen helper, waitress, and mattress stuffer. Claimant alleges an inability to work beginning April 1, 2009 due to limitations resulting from mental impairments, bilateral osteoarthritis of the knees, obesity, and asthma.

**Procedural History**

On January 30, 2012, Claimant protectively filed for protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On February 12, 2014, the Administrative Law Judge ("ALJ") conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from McAlester, Oklahoma. On June 5, 2014, the ALJ entered an unfavorable decision. The Appeals Council vacated the decision and remanded the case for further consideration on October 26, 2015.

A second video administrative hearing was conducted on May 19, 2016 by ALJ Richard Kallsnick with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in Tulsa, Oklahoma. The ALJ entered a second unfavorable decision on June 13, 2016. The Appeals Council denied review on May 12, 2017. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe

impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform work at the light exertional level.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the opinion evidence; and (2) failing to perform a proper credibility analysis.

### Consideration of Opinion Evidence

In his decision, the ALJ found Claimant suffered from the severe impairments of major depressive disorder, anxiety disorder, obesity, and osteoarthritis of the bilateral knees. (Tr. 95). The ALJ determined Claimant retained the RFC to perform light work. In so doing, he found Claimant could lift/carry 20 pounds occasionally and ten pounds frequently. Claimant could sit for six hours out of an eight hour workday and could stand or walk for six hours out of an eight hour workday. Claimant could occasionally climb ramps or stairs and bend, stoop, crouch, and crawl, but never climb ladders or scaffolds. Claimant was able to perform simple tasks, relate to co-workers and supervisors on a superficial work basis, and occasionally deal with the public. (Tr. 97).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of bottling line

attendant, bench assembler, and conveyer line bakery worker, all of which the ALJ found existed in sufficient numbers in the national and regional economies. (Tr. 104). As a result, the ALJ concluded that Claimant was not under a disability from April 1, 2009 through the date of the decision. Id.

Claimant contends the ALJ erred in evaluating the opinion evidence. Specifically, Claimant challenges the diminished weight given by the ALJ to the opinions of Michele Shahan-Hale, Claimant's licensed physical therapist, and Kari Dry, Claimant's licensed professional counselor. Ms. Shahan-Hale completed a Disability Functional Evaluation on June 1, 2016. Ms. Shahan-Hale noted Claimant's diagnosis of osteoarthritis in the right and left knee, asthma, gastroparesis, dysthymic disorder, deviated nasal septum, irritable bowel syndrome, sleep apnea, anxiety, depression, and morbid obesity. (Tr. 1186). She stated in her report that Claimant was "limited with mobility due to pain, strength deficits, balance limitations, and impaired cardiovascular tolerance to activity . . . ." She concluded that Claimant could perform at less than the sedentary level with a maximum occasional lift weight of ten pounds. Id.

Under the report's "recommendations" section, Ms. Shahan-Hale wrote

> Based upon the evaluation today, Ms. McInerney was not

6

> able to demonstrate the ability to work within the Sedentary category, with a maximal occasional lift of 10 lbs., based on the Dictionary of Occupational Titles definition. She further demonstrated limitations in balance, strength, and standing tolerance, - with additional exertional and/or non-exertional limitations. . . .

(Tr. 1187).

In testing, Claimant was able to lift and carry ten pounds. She walked 0.8 mph for 3:43 minutes, taking short and quick steps toward the end of the performance, reporting knee and ankle pain and lightheadedness. She also found Claimant stood for 12 minutes during testing with rests and that the longest Claimant stood at a time was 3:03 minutes. Claimant was noted to have held onto a rail to assist with weight bearing during that time. Claimant's sitting was unaffected by her conditions. Ms. Shahan-Hale determined after testing that Claimant could climb occasionally but never balance, stoop, crouch, kneel, or crawl. Each of these functions were individually tested by the therapist. (Tr. 1192). Similarly, Ms. Shahan-Hale tested Claimant for reaching and handling and determined Claimant could occasionally reach, handle, and finger but not push or pull. She also should not be exposed to heights, moving machinery, chemicals, or dust. (Tr. 1193). After testing, Claimant told Ms. Shahan-Hale that "My knees were killing me after the evaluation. I could not go to sleep and wound up having to take a

pain pill during the night. They are still hurting this morning."
(Tr. 1194).

The ALJ recognized the report of Ms. Shahan-Hale. He concluded, however, that "her assessment is not consistent with the records as a whole and she is not an 'acceptable medical source'. . . ." (Tr. 101). The ALJ must consider the same factors when weighing opinions from non-acceptable medical sources as when weighing opinions from acceptable medical sources. Soc. Sec. R. 06-03p, 2006 WL 2329939, *4 (2006). Soc. Sec. R. 06-03p notes that opinions from such sources may even be entitled to greater weight than that of a treating physician. Id. at *5. In this case, there is no evidence that the ALJ weighed the relevant factors in regard to Ms. Shahan-Hale. The only issue he looked at, other than noting that Ms. Shahan-Hale was not an acceptable source, was the alleged lack of support in the remainder of the record without identifying the specific contradicting evidence. However, the Tenth Circuit has stated that "the ALJ's apparent failure to consider any factor other than supportability makes the ALJ's reasoning insufficient." Andersen v. Astrue, 319 Fed.Appx. 712, 722 (10th Cir. 2009). This is especially troubling since Ms. Shahan-Hale performed independent functional testing upon Claimant before reaching her conclusions. On remand, the ALJ shall consider Ms. Shahan-Hale's opinion and provide a supportable basis for accepting or rejecting her findings,

8

employing the totality of the factors set forth in Soc. Sec. R. 06-03p.

Counselor Kari Dry completed a mental RFC questionnaire on Claimant, noting that she had been treating Claimant over the prior year. She found Claimant suffered from depression at least 3-4 days a week, anxiety 2-3 days a week which was worse in public. Claimant also experienced memory and concentration problems seven out of seven days a week. (Tr. 654). Claimant was found to be "unable to meet competitive standards in the areas of remembering work-like procedures, understanding and remembering very short and simple instructions, maintaining regular attendance and being punctual within customary, usually strict tolerances, responding appropriately to changes in a routine work setting, being aware of normal hazards and taking appropriate precautions, and maintaining socially appropriate behavior. (Tr. 656-57).

In Counselor Dry's estimation, Claimant had "no useful ability to function" in the areas of maintaining attention for two hour segments, working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-

workers or peers without unduly distracting them or exhibiting behavioral extremes, dealing with normal work stress, understanding and remembering detailed instructions, carrying out detailed instructions, setting realistic goals or making plans independently of others, dealing with stress of semiskilled and skilled work, interacting appropriately with the general public, traveling in unfamiliar places, and using public transportation. Id.

The ALJ gave Counselor Dry's opinion "little weight" because she was not an acceptable medical source, her opinions were not consistent with the evidence as a whole. He noted that Claimant's mental condition improved with treatment "to the point that it was more or less controlled and only mildly limiting." He found this was exhibited in the increase of Claimant's GAF score from 55 to 69. (Tr. 102). The ALJ then speculated that "the possibility always exists that a provider (presumably Counselor Dry) may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another." (Parenthetical information added by this Court). He also speculated that patients can be "quite insistent and demanding" in seeking reports from their doctors. (Tr. 103). As stated, the ALJ is still required to evaluate the non-acceptable medical source's opinions under Soc. Sec. R. 06-03p.

The ALJ concluded Counselor Dry's opinion was largely based

upon Claimant's subjective statements which were found to be less than credible. (Tr. 102). More importantly to this Court, a review of Counselor Dry's treatment notes indicates only mild restrictions while the opinion reflects extreme limitation in mental functioning. (Tr. 661, 742, 744, 746, 775, 794, 1004, 1070). As a result, the inconsistency with the remainder of the record justified the ALJ's actions in discounting Counselor Dry's opinion.

**Credibility Determination**

Claimant contends the ALJ failed to consider her excellent prior work history in evaluating her credibility. Certainly, a good work history does bear upon Claimant's credibility and should be considered as one element of the analysis. *See* Tyson v. Apfel, 107 F.Supp.2d 1267, 1270 (D.Colo. 2007). On remand, the ALJ should re-evaluate Claimant's credibility in light of her substantial work history.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the case is REMANDED to Defendant for further proceedings consistent**

**with this Opinion and Order.**

IT IS SO ORDERED this 28th day of September, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE